IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILEY MT., an Oregon corporation,                    OPINION AND ORDER
LEELYNN, INC., an Oregon               Case No. 6:12-cv-00396-AA
corporation,and DUNOLLIE
ENTERPRISES, LLC, an Oregon
limited liability company,

      Plaintiffs,

  v.

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY, an Indiana
corporation,

      Defendant.

_____

Michael E. Haglund
HAGLUND KELLEY JONES & WILDER LLP
200 SW Market Street, Suite 1777
Portland, Oregon 97201
    Attorney for plaintiff

James E. Horne
Joanne Thomas Blackburn
GORDON THOMAS HONEYWELL LLP
600 University Street, Suite 2100
Seattle, Washington 98101
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiffs Wiley MT, Inc., Leelynn, Inc., and Dunollie Enterprises, LLC ("Dunollie") filed suit against property casualty underwriter Indiana Lumbermens Mutual Insurance ("ILM") to recover damages for the total loss due to fire of an insured structure. Dunollie Enterprises, LLC, Leelynn, Inc., and Wylie MT, Inc., are the named insureds under the property policy issued by ILM. Defendant moves for summary judgment. See Fed. R. Civ. P. 56(a). Defendant's motion is DENIED.

## Factual Background

On July 21, 2010, at 6:30 a.m., a large wooden building located at 805 N. 7th Street, Yakima, Washington, was destroyed by fire. The building was one of several on the property and at one time housed a lumber planing, sorting, and stacking operation. ILM first insured the building against casualty loss, including fire, on December 31, 2008 and renewed the policy one year later. The renewed policy ("the Policy") was in effect at the time of the fire.

The Policy issued in 2008 and renewed at the end of 2009 did not contain a provision requiring Dunollie to maintain a sprinkler system in the buildings covered by the Policy. However, the morning of the fire, at 5:04 a.m., ILM uploaded a protective devices endorsement to a software system that is accessible to Dunollie's insurance broker, Ward Insurance Agency ("Ward"). The

Page 2 - OPINION AND ORDER

endorsement contained language requiring that Dunollie maintain sprinkler and fire suppression systems at all times.

The fire was determined to be an arson by the Yakima City Fire Department. The fire department investigated all known leads and did not identify any suspects. The criminal investigation has gone cold pending additional information.

Dunollie submitted a claim for damages to ILM; however ILM denied the claim. ILM argues that Dunollie breached the terms of the Policy by failing to maintain a properly working sprinkler system. ILM therefore contends that due to the breach of contract by Dunollie, ILM has no duty to indemnify Dunollie for the fire loss.

### Standard

Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence might affect the outcome of the suit. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The materiality of a fact is determined by the substantive law on the issue. Id. The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the

court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." Playboy Enter., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002) (citing Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 410 (9th Cir. 1996)).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### Discussion

ILM moves for summary judgment asking that this Court rule, as a matter of law, that ILM has no duty to indemnify Dunollie for the fire loss that occurred at 805 N. 7th Street, Yakima, Washington, on July 21, 2010. ILM argues that the requirement for a functioning sprinkler system was understood by all parties at the time of the original agreement, and consideration was not required when ILM reduced the agreement to writing by adding the protective

Page 4 - OPINION AND ORDER

devices endorsement the morning of the fire.   ILM also contends

that Ward acted as an agent for Dunollie, and therefore Dunollie

received proper notice of the protective devices endorsement the

morning of the fire when ILM delivered an electronic copy of the

endorsement to Ward via the online agency portal.   Finally, ILM

argues that a declaration of a Dunollie employee, Matt McDougal

(McDougal), conflicts with his earlier deposition testimony, and

his inconsistent declaration may be disregarded under the sham

affidavit rule.

## I.  Consideration for the Protective Devices Endorsement

ILM argues that the requirement for a functioning sprinkler

system was understood by all parties at the time of the original

agreement, and therefore consideration was not required for the

endorsement.   By adding the protective devices endorsement, ILM

claims that it was not changing the terms of the contract, but

rather reducing the existing agreement to writing.

Dunollie responds that an insurance company has no power to

modify the terms of its insurance contract by issuing a unilateral

endorsement to an insured.   Dunollie asserts that a modification of

any contract, including an insurance policy, requires a meeting of

the minds and consideration, and that neither occurred in this

case.

In support of its motion, ILM cites an Oregon Court of Appeals

case, Wells Fargo & Co. v. Industrial Indemnity Company, 160 Or.

Page 5 - OPINION AND ORDER

App. 166, 980 P.2d 1138 (1999). In Wells Fargo, the insured brought several claims against an insurer that had denied coverage under an errors and omissions liability endorsement that was added during the policy period. The insurer argued that the new endorsement did not require consideration because it was not a modification of the contract, but was part of the ongoing negotiation of the contract's terms. Id. at 175, 980 P.2d 1138. The Oregon Court of Appeals agreed, concluding that the additional endorsement was part of an ongoing effort to reduce the parties' original agreement to writing; therefore, consideration was not required. Id.

However, the facts in Wells Fargo distinguish it from this case. In Wells Fargo, the additional endorsement replaced an existing endorsement only one month after the original agreement. Id. In addition, the insured was the party that requested the replacement endorsement, to which the insurer ultimately agreed, indicating a meeting of the minds by both parties. Id. Furthermore, the Oregon Court of Appeals felt deposition testimony demonstrated that the parties were attempting to clarify the terms of their agreement during the period of time in which the endorsement was replaced.

In this case, the protective devices endorsement did not replace or amend an existing endorsement; rather, it was an entirely new endorsement. ILM added the endorsement on July 21,

Page 6 - OPINION AND ORDER

2010, the morning of the fire, nineteen months after the original agreement on December 31, 2008, and seven months after the renewal a year later. Furthermore, the deposition testimony of record does not establish conclusively that the parties were attempting to clarify the terms of the agreement.

ILM characterizes Cheri Borgman's deposition testimony as indicative of Ward and Dunollie's knowledge of the requirement to have a properly working sprinkler system in place. Borgman, a Ward employee, testified about an e-mail she sent ILM inquiring about the requirement for a sprinkler system. Blackburn Decl., Ex. B, Borgman Dep. Borgman testified that on July 8, 2010, she "sent an e-mail to [the] underwriter, asking if there would be any repercussions if [Dunollie] decided to turn off the sprinkler system." Id. at 47:10-12. When viewed in the light most favorable to the non-moving party, this testimony could indicate that Borgman did not know whether Dunollie was required to maintain a sprinkler system, which is why she e-mailed ILM to inquire.

A genuine issue of material fact exists as to whether Dunollie knew, prior to the endorsement being added, of the requirement to maintain a sprinkler system. As such, it is unclear whether the endorsement was a modification of the contract requiring consideration, or whether it was a reflection of the existing agreement that ILM merely reduced to writing. Because an issue of fact exists as to whether Dunollie had knowledge of the requirement

Page 7 - OPINION AND ORDER

prior to the endorsement, summary judgment is not proper.

## II.  **Proper Notice to Dunollie**

ILM states that it notifies the insured's agent of a change to an insurance policy by uploading documents to an online agency portal, thereby delivering an electronic copy of the documents to the agent online.  Pianko Decl., ¶ 2.  Once a document is uploaded into the portal system, a notice e-mail is automatically generated and sent to the insurance agent on the file.  Id.  Borgman and Mindi Crawford were the Ward employees designated to receive e-mail notifications from ILM pertaining to Dunollie's policy.  Id.

ILM argues that Dunollie received proper notice of the protective devices endorsement prior to the fire, because an electronic copy of the endorsement was delivered to Dunollie's agent, Ward, via the online portal the morning of the fire.  As such, once the document was uploaded into the portal system, an automatically generated e-mail must have been sent to Borgman and Crawford at Ward.  ILM asserts that Ward was Dunollie's agent, therefore notice to Ward constituted notice to Dunollie.

Dunollie argues that Ward was an agent of ILM, not an agent of Dunollie.  Therefore, Dunollie maintains that even if the Court finds that Ward received proper notice of the endorsement, this notice did not extend to Dunollie.  In making this argument, Dunollie cites Or. Rev. Stat. § 744.078(4), which states in relevant part:

Page 8 - OPINION AND ORDER

[A]ny person who solicits or procures an application for insurance as an agent of the insurer shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured.

ILM contends that the statute was not intended to apply to these circumstances.

However, the plain language of the statute dictates that Ward should be considered as the agent of ILM, not Dunollie. If ILM contends otherwise, it must present evidence that Dunollie authorized Ward to act as its agent in these specific circumstances. At a minimum, a question of fact exists as to whether Ward was acting as Dunollie's agent. Moreover, whether or not Ward is considered an agent of Dunollie, a genuine issue of material fact exists as to whether Ward received notice of the endorsement prior to the fire.

While it is undisputed that the endorsement was uploaded to the portal system the morning of the fire, a question of fact remains as to whether notifying e-mails were sent to Borgman, Crawford or anyone else at Ward. Charles O'Dell, Ward Account Executive in charge of servicing the insurance accounts for Dunollie, stated in his declaration that Ward "searched the e-mails for all the personnel involved with plaintiffs' insurance accounts and found no e-mail notice from ILM regarding a protective devices endorsement." O'Dell Decl., ¶ 7. Rather, when Ward examined the ILM portal system on August 1, 2011 to determine whether an

Page 9 - OPINION AND ORDER

endorsement had been added to the policy, Ward found that ILM had

issued a protective devices endorsement on July 21, 2010, the

morning of the fire. Id. Thus, Ward never forwarded a copy of the

protective devices endorsement to Dunollie because Ward was not

aware of it until after the date of the loss. Id. Construing this

evidence in favor of Dunollie, a question of fact remains as to

notice.

### III. Testimony of Matt McDougal

Finally, ILM argues that McDougal's declaration is

inconsistent with an earlier deposition, and therefore McDougal's

declaration should be disregarded under the sham affidavit rule.

On February 10, 2011, McDougal testified as follows:

Q: In Building 10, prior to the fire was the sprinkler
system functional?

A: Yes.

Q: Was all of it functional?

A: There was one zone on the southeast corner that was
not. It was taken down during equipment removal and must
have been in '03, the first auction that was there.
. . .

Q: So in '05 when you came, was the zone of the fire
sprinkler system in the southeast corner of Building No.
10 still not operating?

A: Yeah. It was not operational. It was completely
dismantled.

Blackburn Decl., Ex. D (McDougal Dep. 13:4-10, 14:5-9).

Page 10 - OPINION AND ORDER

Nearly two years later, on November 19, 2012, McDougal stated the following in his declaration:

> The planer itself had been located almost entirely in an add-on structure . . . For soundproofing reasons, the planer was also housed within a subbuilding that was below the roof of the add-on structure . . . and extended less than [ten] feet into the southeast corner of the planer building. . . Within the 70,000-square foot planer building, the sprinkler system serving this five-story structure extended throughout the entire building including the area above that part of the planer subbuilding that extended into the large structure . . . When the planer was sold at auction and dismantled, it was necessary to dismantle portions of the sprinkler system that were located in the subbuilding above the planer in order to facilitate its removal from the subbuilding. Even after this dismantling, the sprinkler system in the large structure . . . was fully sprinklered and functional below the roof and well above the subbuilding in the southeast corner of the building. The add-on structure . . . was open on two sides and did not have a functional sprinkler system after the planer was removed.

McDougal Decl. ¶¶ 4-5.

The Ninth Circuit has held that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). The logic behind this rule is to preserve the utility of the summary judgment procedure. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009)

(quoting Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985)).

It is understood, however, that the sham affidavit rule is in direct conflict with the principle that during a summary judgment motion the court is precluded from making credibility determinations or weighing conflicting evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Ninth Circuit has thus recognized that the sham affidavit rule "should be applied with caution." Van Asdale, 577 F.3d at 998 (quoting Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993)). The rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Kennedy, 952 F.2d at 266-267.

Accordingly, the Ninth Circuit has imposed limitations on a district court's discretion to invoke the sham affidavit rule. Van Asdale, 577 F.3d at 998. Before applying the rule, "the district court must make a factual determination that the contradiction was actually a 'sham.'" Kennedy, 952 at 267. The inconsistency in the testimony must be clear and unambiguous to justify striking the evidence. Van Asdale, 577 F.3d at 998-999. Therefore, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest

Page 12 - OPINION AND ORDER

discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Id. at 999 (quoting Messick v. Horizon Indus., 62 F.3d 1227, 1231 (9th Cir. 1995)).

Here, the discrepancies between McDougal's testimony at the February 2011, deposition and his declaration in November 2012, amount to minor inconsistencies. McDougal first stated that at the time of the fire, the sprinkler system throughout Building 10 was fully operational except for a portion in the southeast corner of the building where the sprinklers had been dismantled to facilitate equipment removal. McDougal later submitted a declaration that appears to clarify his earlier testimony. In the declaration, he states that the portion of the sprinkler system that had been dismantled was in a subbuilding attached to the southeast corner of Building 10.

There is no indication that McDougal's declaration was intended as a sham. As such, this Court declines to disregard the declaration. McDougal's credibility and the question of whether the sprinkler system was operational at the time of the fire are issues for the trier of fact and should not be considered at summary judgment.

## Conclusion

ILM did not meet its burden of establishing the absence of a genuine issue of material fact. Therefore, ILM's motion for summary judgment (doc. 34) is DENIED. ILM's request for oral

Page 13 - OPINION AND ORDER

argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this _12_ day of July 2013.

_____
Ann Aiken
United States District Judge